UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

PURSUIT SPECIAL CREDIT OPPORTUNITY
FUND, L.P.,                                                  :
                                                            :
                              Plaintiff,                     :     Case No.: 9:21-cv-81979
                                                            :
                - against -                                 :     <u>COMPLAINT</u>
                                                            :
KRUNCHCASH, LLC, KC PCRD FUND LLC,                           :     **JURY TRIAL DEMANDED**
and JEFFREY HACKMAN,                                        :
                                                            :
                              Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

By their undersigned counsel of Tobin Reyes, P.A. and Slarskey LLC, Pursuit Credit Special Opportunity Fund, LP ("Pursuit") alleges for its Complaint against KrunchCash LLC ("KrunchCash"), KC PCRD Fund LLC ("KC PCRD"), and Jeffrey Hackman ("Hackman"), (collectively, "Defendants"), as follows:

## <u>BACKGROUND</u>

1.     This case concerns financial impropriety, material breaches, and fraud perpetrated by an alternative investment manager, Defendant KrunchCash, its wholly-owned subsidiary Defendant KC PCRD, and its sole owner and CEO, Defendant Hackman, against its investor, Plaintiff Pursuit.

2.     KrunchCash is a specialty finance company that originates and services alternative assets, such as legal funding (plaintiff funding and law firm advances) and medical receivables. Beginning in 2015, Pursuit invested over $10 million into KrunchCash and its wholly-owned subsidiary, KC PCRD. The first three years of the relationship were adequate (indeed, profitable). Beginning in 2019, however, collections slowed to a halt.

3.      In the second half of 2019, Pursuit learned that its two largest KrunchCash investments — the "Maryland[1] Advance" and the "Pharma Advance," collectively accounting for over $10 million in outstanding principal from Pursuit — had become impaired. The Maryland and Pharma parties were in default of their obligations, and as a result KrunchCash (and Hackman, personally) had become embroiled in litigation adverse to the Maryland and Pharma parties (the "Default Actions").

4.      Faced with costly litigation against Maryland and Pharma (and *by* them against KrunchCash and Hackman), KrunchCash requested new investment funds from Pursuit, which Pursuit provided. Pursuit advanced several hundred thousand dollars in funding to KrunchCash, in an effort to protect the Maryland and Pharma Advances.

5.      As the Default Actions progressed, and Pursuit began demanding transparency into the use of funds, Hackman grew secretive, aggressive, and erratic. Citing the Default Actions as the justification for rewriting KrunchCash's economic arrangement with Pursuit, Hackman demanded additional extra-contractual compensation. For nearly two years, KrunchCash and Hackman repeatedly demanded that Pursuit make immediate payment of hundreds of thousands of dollars for purported legal funding of the Default Actions, predicated on artificial deadlines and false statements as to the use of proceeds. Pursuit, acceded to Hackman's demands against the backdrop of Hackman's repeated and veiled threats: wire money immediately, without asking questions, or he would sabotage the litigations in bad faith.

6.      The Pursuit-KrunchCash relationship worsened, and Pursuit learned that while Hackman was demanding more capital, KrunchCash had also been concealing recoveries on

---

[1] Names of the Advances and KrunchCash's other investors are redacted.

other funding advances (which should have been distributed), and actively misappropriating funds from Pursuit to fund KrunchCash's own operations.

7.      In early 2021, Pursuit engaged counsel to clarify matters and to protect its investment with KrunchCash. Only then did Pursuit learn that KrunchCash had improperly used Pursuit's funds to subsidize co-investors' portions of syndicated transactions (including KrunchCash's own portion), misdirected Pursuit's investment capital to KrunchCash's management (as opposed to the Default Actions), improperly converted Pursuit's unrelated investments, concealed hundreds of thousands of dollars of spiraling legal fees, and, egregiously, ***collected but did not disclose or disburse $2.5 million*** from the Maryland Advance litigation.[2]

8.      Today, KrunchCash's assets have dwindled and KrunchCash has been reduced to a one-man operation: Hackman. Since Pursuit's discovery of the impropriety, Hackman has only become more entrenched — regularly threatening to scuttle the litigations, to improperly borrow third-party funds (instead of using Pursuit's funds, and thereby frustrating Pursuit's investment), or to cancel Pursuit's position altogether if Pursuit does not accept KrunchCash's extortionate demands for unearned management fees, accede to Hackman rewriting the investment proceeds distribution waterfall, and abandon Pursuit's legitimate and valuable unrelated claims against KrunchCash.

9.      Pursuit faces a two-edged sword: Pursuit is **willing and able** to fund the Default Actions (particularly Pharma, as discussed *infra*) to protect its valuable investment in the Advances—but cannot do so under the constant duress of Hackman's threats to sabotage the assets or further dissipate assets. Prior to commencing this action, in an effort to support the Default Actions without being subjected to Hackman's escalating threats, Pursuit proposed that Pursuit

---

[2] Pursuit immediately filed an arbitration, which was abandoned in favor of this action.

continue to fund its portion of legal fees of Pharma, and that all monies (Pursuit's monies in, and settlement proceeds when realized) be preserved through an escrow agent, pending dispute resolution. Defendants rejected that proposal because they refused to consent to measures that would assure the safekeeping of funds, or to abide by the reasonable controls Pursuit requested.

10.     Pursuit urgently seeks relief from this Court to curb Hackman's abuse, and to protect Pursuit's valuable $10 million investments.

## PARTIES

11.     Pursuit is a Delaware limited partnership with a principal place of business in New York. Pursuit has invested tens of millions of dollars in KrunchCash and its affiliates since 2015. Pursuit's limited and general partners are citizens of New York, Massachusetts, Connecticut, Texas, and Nevada. Pursuit is not a citizen of the State of Florida.

12.     KrunchCash is a Florida limited liability company with a principal place of business in Florida. Upon information and belief, KrunchCash's sole member is Defendant Jeffrey Hackman, who is a citizen of the State of Florida.

13.     KC PCRD is a Florida limited liability company. KrunchCash is the "parent" of KC PCRD, and upon information and belief the sole member of KC PCRD. Hackman is listed as the manager of KC PCRD. KC PCRD is a citizen of Florida.

14.     Hackman is an individual residing in Florida. He is the Chief Executive Officer and Chief Operating Officer of KrunchCash, and the "manager" of KC PCRD.

## JURISDICTION

15.     This Court has jurisdiction over all causes of action asserted herein pursuant to U.S.C. § 1332(a)(1) because Plaintiff is a citizen of a different State from each of the Defendants, and because the amount in controversy in this dispute exceeds $75,000.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendants KrunchCash, KC PCRD, and Hackman are based in Florida, KrunchCash's and KC PCRD's operations are based in Florida, and a substantial part of the actions and communications giving rise to the claims occurred in Florida.

## DETAILED ALLEGATIONS

### A. Background on the Pursuit-KrunchCash Relationship

17.     Pursuit is an investment vehicle focused on opportunities in alternative consumer credit.

18.     In 2015, Pursuit began investing into KrunchCash, an entity owned and controlled by Hackman. KrunchCash is a Florida-based specialty finance company that originates and services investments in legal funding (*i.e.,* third-party litigation finance, plaintiff advances, and attorney funding) and medical receivables.

19.     Between 2015 and present, Pursuit invested over $10 million (tens of millions after reinvestment) with KrunchCash and KrunchCash's wholly-owned subsidiary KC PCRD.

20.     The fundamental Pursuit-KrunchCash relationship, as documented in "funding agreements" and "purchase agreements" between the parties (discussed below), is a revenue-share arrangement[3]: (i) Pursuit invests funds into KrunchCash (or KrunchCash's affiliate) to support a particular asset; (ii) KrunchCash contemporaneously advances monies to a third-party

---

[3] KrunchCash did not respect formalities with respect to raising capital from third-party investors. Defendants have never issued tax documentation (*e.g.,* a K-1 or Form-1099) to Pursuit. On information and belief, KrunchCash's use of revenue-share arrangements, documented in "Investor Funding Agreements" and "Purchase Agreements" were part of an effort by Defendants to evade regulatory scrutiny and investor rights and legal protections.

entity (*e.g.,* a law firm, plaintiff, or medical provider requesting funds from KrunchCash) through an advance (an "Advance"[4]); and (iii) upon the resolution of the Advance, monies are to be split between Pursuit and KrunchCash pursuant to an agreed-upon "waterfall," discussed further *infra*.

21.     From 2015 through mid-2018, Pursuit and KrunchCash operated under two agreements: an Investor Funding Agreement (the "Original IFA") dated April 2015 (and as amended), and a separate Purchase Agreement (the "Purchase Agreement") dated September 29, 2017 (as amended).

22.     As of early-2018, Pursuit had positions in two main categories of Advances outstanding with KrunchCash:

Maryland Advance: Pursuit had outstanding principal of approximately $4.08 million in a series of Advances KrunchCash had made with a Maryland-based law firm and its affiliates (the "Maryland Advance"). Hackman had been friends and formerly business partners with the principal of the Maryland-based law firm. KrunchCash has represented that KrunchCash invested in the aggregate over $17 million into the Maryland Advances, divided among Pursuit (approximately $4 million or 23%), KrunchCash's proprietary capital (approximately $3.3 million or 19%), and a third investor, a Florida-based asset manager (the "Other Investor") (approximately $10.1 million or 58%). Pursuit's investment in the Maryland Advance was made pursuant to the Original IFA.

Miscellaneous Plaintiff Advances: Pursuit funded a portfolio of miscellaneous advances to attorneys and/or plaintiffs secured against personal injury litigations (the "Miscellaneous Plaintiff Advances"). KrunchCash retained control of these assets as a servicer. The Miscellaneous Plaintiff Advances were valued at several hundred thousand dollars in early-

---

[4] In referring to the Advances, the parties also sometimes used the term "Funding Agreement."

2018 and provided smaller but steadier income to Pursuit. As discussed further *infra*, in June 2019, KrunchCash confirmed in writing a debt due and owing to Pursuit for $239,366 on behalf of these assets. Pursuit's position in the Miscellaneous Plaintiff Advances falls under the Purchase Agreement.

23.     In April 2018, KrunchCash requested that Pursuit enter into a new agreement, to include KrunchCash's newly-formed and wholly-owned subsidiary, KC PCRD. KrunchCash represented that the KC PCRD entity was necessary and appropriate as a corporate formality to partition one investor from another (*i.e.,* to prevent commingling), effectively as a "managed account" through which Pursuit's investment would flow.

24.     In April 2018, Pursuit, KC PCRD, and KrunchCash entered into an Amended and Restated Funding Agreement (the "Amended IFA"). Pursuant to the Amended IFA, KrunchCash and KC PCRD are required to assign "all of KrunchCash's right, title and interest" in "any and all future proceeds received from any Advances provided by KrunchCash with any Investor funding under [the Original IFA]" to KC PCRD for proper accounting and distribution to Pursuit.

25.     Notwithstanding the revisions, the Pursuit-KrunchCash relationship remained substantially unchanged: KrunchCash (not KC PCRD) remained the contractual party on Advances with third-parties, KrunchCash continued to reflect Pursuit as the owner of Advances which KrunchCash originated, and KrunchCash made all day-to-day decisions (using its personnel and otherwise) concerning the Advances.

26.     When Pursuit invested additional monies to existing and new Advances (or the ultimate litigation, discussed *infra*), at Hackman's direction, Pursuit funded monies to KrunchCash's bank account, not KC PCRD.

27.     The Amended IFA does not alter the parties' agreement concerning the Miscellaneous Plaintiff Advances, which fall under the Purchase Agreement.

28.     Following the execution of the Amended IFA, Pursuit made two new investments and KrunchCash originated new Advances using Pursuit's funds:

Pharma Advance: Between July 2018 and April 2019, Pursuit invested approximately $6.16 million of KrunchCash's Advance to a Texas-based pharmaceutical business (the "Pharma Advance"). KrunchCash has always documented Pursuit as having a 96% position in the Pharma Advance, with an "Other Investor" owning 4%.

Connecticut Advances: Pursuit invested several hundred thousand dollars into a series of law firm receivables connected with a Connecticut-based law firm (the "Connecticut Advances").

29.     The Amended IFA does not expressly address *future* Advances, *i.e.,* those made after the Amended IFA (only "Advances" made under the "Existing Agreement). However, the mechanics, in practice, were substantially identical: with Pursuit wiring monies to KrunchCash, KrunchCash as the contracting party with borrowers, KrunchCash reflecting Pursuit as the owner on a ledger KrunchCash maintained, and KrunchCash remitting funds directly back to Pursuit.

30.     In sum, Pursuit's positions with KrunchCash during the relevant time period are as follows:

| **Advance** | **Principal Outstanding (in order of size)** |
|---|---|
| **Pharma Advances:** contracts between KrunchCash and the Pharma parties | $6.16 million, *i.e.,* 96% of the total $6.5 million |
| **Maryland Advances:** contracts between KrunchCash and the Maryland parties. | $4.08 million, *i.e.,* 23% of the total $17.5 million |
| **Miscellaneous Plaintiff Advances:** contracts between KrunchCash and various Plaintiffs | $239,366, pursuant to the June 2019 agreement |

| **Connecticut Advances:** contracts between KrunchCash and a Connecticut-based law firm | Approximately $235,000, from an original $872,000 in principal |
|---|---|

31.     As is documented in all three of the written agreements, Pursuit and Defendants KrunchCash and KC PCRD agreed to a "0 and 50" compensation structure. More specifically, the parties agreed that Pursuit would not pay Defendants any upfront "management" ("Servicing Fee" as defined in the Amended IFA[5]) for Defendants' management of the assets. Rather, when and if any given Advance is successful, Pursuit compensates Defendants on an incentive basis through a distribution of half (50%) of the profits, *i.e.,* amounts returned allocatable to Pursuit in excess of the principal Pursuit invested.[6] This structure is known as a "0 and 50" structure, *i.e.,* 0% management fee, 50% performance fee or profit-participation.

32.     Pursuit relied upon the alignment between the parties, *i.e.,* that KrunchCash was incentivized to execute and service sound investment opportunities, because it was only compensated from profits from Advances. Indeed, between 2015 and summer 2019, Pursuit paid KrunchCash $3.7 million in back-end 50% performance fees.

**B.  Defendants' Conceal the Impairment of the Maryland and Pharma Advances**

33.     The parties' relationship changed dramatically in August 2019.

---

[5] The Amended IFA provides that "Company [KC PCRD] will receive a servicing fee in the amount of zero percent (0%) of each Advance provided with the Investor Funding ("Servicing Fee")."

[6] This compensation structure differs, commercially, from more conservative asset management structures which invert the incentives. Whereas under a more traditional asset management compensation model, the manager (Defendants) may be compensated with *lesser* performance compensation in exchange for *greater* upfront compensation (*e.g.,* the traditional "2 and 20" model, where an asset manager receive a 2% upfront management fee and a 20% performance fee), here, the parties structured compensation to heavily incentivize performance of the underlying Advances.

34.     By early-August 2019, Pursuit became concerned about halted realizations from Advances, and made written requests for transparency into asset performance and liquidity prospects, which went unanswered.

35.     In August 2019, Pursuit brought an accounting firm to KrunchCash's offices to conduct an in-person investigation (a "review") of Pursuit's investment. Pursuit's accountants were unable to complete their review because KrunchCash refused to provide full access to KrunchCash's books and records (including unredacted versions of bank statements).[7]

36.     That same month, Hackman divulged to Pursuit for the first time that KrunchCash had initiated litigation against the Maryland law firm for defaults under the underlying Maryland Advance. Pursuit's principals' interaction with Hackman was visibly awkward and strained, and it became clear through discussions that KrunchCash had deliberately concealed the KrunchCash-Maryland issues from Pursuit.

37.     KrunchCash had invested *more than $17 million* with Maryland — with more than $4 million (23%) attributable to Pursuit alone — such that Defendants' concealment of the impairment of the Maryland Advance was highly material.

38.     Pursuit's subsequent investigation revealed that KrunchCash had, in fact, filed suit against the Maryland law firm and its principal *well prior to* Pursuit's August 2019 interactions with KrunchCash and Hackman. Pursuit is now aware that, no later than *March* 2019, *i.e.,* nearly a half year earlier, KrunchCash met with the Maryland law firm's principal, declared the Maryland Advance in default, and was informed by the Maryland law firm's principal that he

---

[7] KrunchCash and KC PCRD have not, to date, issued tax documentation (*e.g.,* Form K-1's or 1099's) or financial statements to Pursuit.

was indebted to "two loan sharks" who "had threatened [the principal] and his family with bodily harm."

39.     Remarkably, KrunchCash not only failed to disclose the default (or the loan shark allegations) to Pursuit, KrunchCash "*provided the [Maryland law firm] $160,000 to pay off the loan sharks* and merchant cash advances" and "continu[ed] to fund the [Maryland] law firms." KrunchCash's decision to fund the Maryland law firm in spite of obvious fraud and fiduciary mismanagement belies any standard of investment sensibility and was completely undisclosed to Pursuit.

40.     Pursuit remains unaware of precisely when KrunchCash first learned that there were issues with the Maryland Advance, whether KrunchCash was aware of these issues when it caused Pursuit to amend the agreements in April 2018, or whether and how Hackman's multi-decade personal relationship with the Maryland parties impacted the $17 million default.

41.     Separately, just several months later, Pursuit learned that there had also been issues with the Pharma Advance. KrunchCash informed Pursuit that Pharma had initiated litigation against KrunchCash and Hackman (personally), alleging KrunchCash's Advances to Pharm were usurious. Pursuit only later discovered, approximately one year after Pharma initiated its litigation against KrunchCash, that KrunchCash and Hackman had not accurately disclosed the status of the KrunchCash-Pharma relationship leading up to the Pharma-KrunchCash litigation.

42.     These circumstances obviously represented yet another highly material impairment to KrunchCash's over $6 million Advance to Pharma, and Pursuit's 96% position therein.

11

43.     Pursuit became justifiably concerned: in just a span of months, over $10 million of invested capital had become at risk of complete loss and was buried in litigation controlled by KrunchCash, whom Pursuit had entrusted to wisely manage its investments.

**C. Defendants' Demands for Additional Investment Capital, Management Fees, and Threats to Discontinue the Actions**

44.     With KrunchCash and Hackman focused largely on the Default Actions against Maryland and Pharma, which were efforts to recover the Maryland Advance and the Pharma Advance, and not initiating new Advances, KrunchCash and Hackman noticeably changed their behavior.

45.     In order to fund the litigation against Maryland and Pharma (and defend claims asserted *by* Pharma against KrunchCash and Hackman), KrunchCash and Hackman requested that Pursuit provide new investment funds, which Pursuit provided.[8] Defendants' demands for legal funding from Pursuit, however, were aggressive, misleading, and sought to rewrite the compensation structure to which Defendants and Pursuit had agreed.

46.     For instance, on March 20, 2020, KrunchCash demanded that Pursuit fund $186,673, *i.e.,* 23% of the $811,620 KrunchCash supposedly incurred in legal expenses for the Maryland Default Action, and $36,351, *i.e.,* "95%"[9] of the legal fees for the Pharma Default Action, imposing upon Pursuit an artificial deadline of just a few days to fund the capital contribution. KrunchCash did not provide *any* support (in the form of legal invoices or out-of-pocket expenses) ahead of Pursuit's funding that would substantiate that those fees had actually been incurred.

---

[8] KrunchCash has inconsistently argued that Pursuit invested capital for the Default Actions under the Amended IFA and/or that Pursuit invested *separate and apart from the Amended IFA.*
[9] "95%" is not an error. KrunchCash has inconsistently represented that Pursuit is allocated 95% and 96%.

47.     As part of the March 2020 request, Hackman also began demanding to retrade the parties' "0 and 50" compensation structure, such that KrunchCash and its management would be compensated even though the Advances were not performing (while simultaneously maintaining the right to a 50% profit share).

48.     More specifically, KrunchCash initially demanded that Pursuit compensate KrunchCash's general counsel, Sean McGhie ("McGhie") $90,000 as part of Pursuit's contribution for the Maryland and Pharma Default Actions. There was simply no basis for the request. *First,* McGhie was an employee or contractor of *KrunchCash*, compensated derivatively through the "0 and 50" compensation structure. To the extent KrunchCash had a shortfall, that was *KrunchCash's* responsibility, not Pursuit's. *Second,* even if that were not the case, McGhie had served as a *transactional* attorney for KrunchCash, with no apparent participation in the Maryland or Pharma Default Actions. Indeed, he has never appeared as counsel in either the Maryland or Pharma Default Actions and thus, was not a legitimate litigation expense.

49.     Whereas KrunchCash earned returns from Pursuit based on its agreed-upon share of the healthy profits from 2015 through 2019, KrunchCash now had no apparent current revenue from Pursuit from which to fund its servicing obligations — including *its own* obligations to fund the Maryland and Pharma Default Actions, and management overhead (*e.g.,* McGhie).[10] Faced with an obvious liquidity crisis, Defendants plainly and improperly attempted to shift servicing costs, such as McGhie, onto *the investors*.

50.     Pursuit consistently rejected KrunchCash's requests that McGhie be compensated in a manner other than as outlined in the parties' documented agreements.

---

[10] Moreover, on information and belief, around the same time, KrunchCash had also been facing losses related to investments into funding players in the NFL Concussion litigations.

51.     Just four months later, in July 2020, KrunchCash again (and without advanced warning) sought advancement of monies for the two litigations. This time, Hackman ratcheted up his demands, asserting that "[i]f [Pursuit] is unable or unwilling to reimburse KrunchCash …, then KrunchCash will have to cease its recovery efforts." KrunchCash's message was a thinly-veiled threat, meant to urgently extract an *additional* $352,728.31 from Pursuit by an artificial deadline of August 5 — *i.e.,* one week after KrunchCash's request to Pursuit.

52.     KrunchCash represented, at the time, that there had been expenses of "$1.5M+" for the two litigations — a $700,000 increase from just four months earlier — but did not explain how or why the legal fees had ballooned so dramatically in that time period. KrunchCash did not, until much later, begin providing invoices to Pursuit, and, even then, the invoices were incomplete and sporadic.

53.     In conjunction with the July 2020 demands, KrunchCash reiterated its extra-contractual demand that *KrunchCash* be reimbursed for *its* overhead and salaries. This time, openly repudiating the contractual waterfall payment structure, KrunchCash indicated that if Pursuit failed to accede to an additional upfront payment to KrunchCash and its principals, KrunchCash would forcibly deduct a "to be determined" amount from any future recoveries from the Maryland or Pharma Advances *in addition* to the 50% profit split.

54.     Again, Pursuit expressed that it was willing to pay for legitimate third-party legal fees but declined to consent to KrunchCash's extra-contractual demands for payment.

55.     All said, Pursuit was concerned: if Pursuit did not meet KrunchCash's demands, KrunchCash would scuttle the litigations in bad faith, and, *even if* the Maryland or Pharma litigations ultimately paid off, KrunchCash would deduct unwarranted fees.

14

56.     For nearly two years, Hackman perpetuated a cycle of erratic and aggressive demands upon Pursuit: wire hundreds of thousands of dollars to KrunchCash without asking questions, and meet KrunchCash's demands for extra-contractual payments, or KrunchCash would sabotage the litigations, or worse.

**D.  KrunchCash's Refusal to Provide Transparency**

57.     KrunchCash's aggressive demands for payment continued for almost two years, and Hackman grew increasingly mercurial and obfuscatory.

58.     Pursuit repeatedly requested that KrunchCash provide an accounting of all legal expenses incurred and disclose any settlements realized from the Maryland or Pharma Default Actions. KrunchCash refused to provide that information — dribbling the occasional invoice into a shared Dropbox account, but never providing a complete reconciliation of the Default Action accounting.[11]

59.     Compounding the information asymmetry, KrunchCash selectively disclosed information concerning the Maryland and Pharma Default Actions — painting a rosy picture that the litigations were on the brink of settlement with only a little more investment (from Pursuit), while simultaneously refusing to provide reasonable information requested by Pursuit, such as a refusing to provide a budget (or even request that counsel provide one).

60.     KrunchCash's litigation updates were never entirely accurate, but not just because of the inherent unpredictability of litigation (which Pursuit could have reasonably understood). Rather, and troublingly, much delay and failure was a result of Hackman's turbulent behavior in litigation. Bizarrely, Hackman began to *enjoy* the adversarial nature of litigation. As

---

[11] As discussed below, KrunchCash did not provide invoices between July 2020 and May 2021 until later KrunchCash surreptitiously deposited invoices into a Dropbox after Pursuit engaged counsel, who requested the invoices.

is reflected in publicly-available documents, Hackman transformed the Maryland Default Action into a personal vendetta against the principal of the Maryland law firm and his family (rather than a simple action for defaulted notes), and, on Pharma, began text messaging the Pharma counterparty threatening photos — further inflaming his adversary. This is not behavior expected of a prudent fiduciary tasked with protecting multi-million dollar financial instruments with corporate counterparties.

61. Throughout KrunchCash's demands for capital contributions to fund the Maryland Default Action, KrunchCash kept representing that *Pursuit* was alone, among investors, in being concerned about the trajectory of the Default Actions. Specifically, KrunchCash represented on multiple occasions that the "*Other Investor*" (the other 58% funder of Maryland) had been *thrilled* with their relationship with KrunchCash, and that the Other Investor had provided KrunchCash *carte blanche* to pursue the Maryland Default Action to enforce the Maryland Advance. KrunchCash represented that only *Pursuit* had fallen behind on its ratable share of funding for the litigation — whereas *KrunchCash* (*pro rata* to its share of the Maryland and Pharma Advances) and the Other Investor (*pro rata* to its share of the Maryland Advance) were current. *Pursuit*, Hackman declared, was the problem.

62. In August 2020, unable to make sense of KrunchCash's erratic demands for cash payments, unsatisfied with the responses from Hackman, and with KrunchCash's bills unsubstantiated, Pursuit contacted the Other Investor. Pursuit intended to gather additional information on the underlying Maryland Default Action, ascertain whether the Other Investor could square KrunchCash's mercurial demands, verify KrunchCash's unsubstantiated bills, and commiserate with a similarly situated investor seeking to recoup millions of dollars at risk of loss

in part as a result of KrunchCash's mismanagement. This was perfectly ordinary investor behavior, *i.e.,* similarly situated investors comparing notes.

63.     Hackman, however, immediately inserted himself in the way of Pursuit's investigation, sending Pursuit a hostile letter demanding that Pursuit cease speaking with the Other Investor. Despite the fact that there is no legitimate barrier to Pursuit and the Other Investor discussing their parallel investments in a shared investment manager, Hackman threatened Pursuit if it continued its contact with the Other Investor.

64.     KrunchCash was deliberately putting Pursuit in an unwinnable situation. KrunchCash kept demanding that Pursuit make payments but gave Pursuit no transparency into the use of funds or the trajectory of the Default Actions concerning the Advances.

**E.  KrunchCash's Initial Misappropriation of Funds**

65.     With KrunchCash and Hackman refusing to provide transparency, Pursuit resisted contributing additional funding on Hackman's terms.

66.     Unable to extract unquestioned funding from Pursuit at this point, Hackman and KrunchCash started misappropriating funds and assets from Pursuit.

67.     *First*, as noted, Pursuit maintains other investments with KrunchCash, *i.e.,* the Miscellaneous Plaintiff Advances and the Connecticut Advances. In June 2019, as KrunchCash had become embroiled in litigation with Maryland, KrunchCash requested that it temporarily postpone payment of $239,366 undisputedly due and owing to Pursuit on behalf of resolved Miscellaneous Plaintiff Advances. Pursuit agreed to the temporary postponement (without knowledge of the material fact that the Maryland Advance had been impaired) on the condition that KrunchCash confirm its liability to Pursuit in writing, which the parties eventually memorialized on June 4, 2019.

68.     Subsequently, as the Maryland and Pharma issues surfaced, and with Pursuit unwilling to further accede to KrunchCash's extra-contractual demands for payment, facing mounting financial pressure, KrunchCash refused to resolve or properly account for the $239,366 payable to Pursuit.

69.     *Second*, KrunchCash converted newly-realized recoveries from the Connecticut Advances. Prior to the initiation of the Maryland and Pharma Default Actions, when KrunchCash realized recovery from an Advance, KrunchCash promptly paid Pursuit its portion thereof. Since the Default Actions began, KrunchCash began taking the monies collected from the Advance and applying them to KrunchCash's legal bills, without authorization and despite protest from Pursuit. In total, KrunchCash has improperly withheld several hundred thousand dollars of asset realizations from Pursuit, and it is unclear whether KrunchCash has cashed additional repayments belonging to Pursuit.

70.     *Third*, in 2021, more than a year after Pursuit was informed about the Pharma-KrunchCash Default Action, Pursuit discovered that KrunchCash had mishandled, partially misappropriated, and misrepresented the nature of $700,000 recovered on the Pharma Advance.

71.     Prior to the Pharma Default Action in 2020, KrunchCash represented that it collected funds from Pharma in the ordinary course, *i.e.,* directly from the Pharma party — to give the impression that Pharma was performing. Pursuit learned, however, that KrunchCash did not collect the funds from Pharma, but rather had intercepted funds in a hostile maneuver from a third-party insurance payor. KrunchCash's representation that the $700,000 recovered was indicative of a healthy relationship was false: in fact, KrunchCash had only procured those funds after the

KrunchCash-Pharma relationship had soured, the parties were in full-blown dispute, and the Pharma Advance was materially impaired.

72.     Also problematically, KrunchCash collected those monies at a time when Pursuit's outstanding principal in the Pharma Advance was over $6 million. Instead of remitting all funds to Pursuit, as is required until all principal is repaid, KrunchCash arbitrarily deemed a portion of the $700,000 as "profit," and therefore subject to the 50/50 profit-split discussed above. KrunchCash misappropriated several hundred thousand dollars in cash as a result of this improper transaction. KrunchCash and Hackman manufactured a convoluted and nonsensical theory to justify their retention of the funds, which Pursuit rejects. Defendants plainly stole money owed to Pursuit.

73.     Pursuit now realizes that KrunchCash's investment arrangement with Pursuit was deliberately designed and implemented by Defendants to give KrunchCash and Hackman the opportunity to misappropriate funds. Although the Amended IFA requires KrunchCash to use the KC PCRD entity to isolate Pursuit's assets (ostensibly to *prevent* commingling), and for KC PCRD to service and collect proceeds, KrunchCash nevertheless has insisted that KrunchCash: (i) control Pursuit's funds through a commingled account owned by KrunchCash; (ii) own the underlying asset; (iii) own Pursuit's assets; and, (iv) receive pay-offs directly from borrowers — across both Pursuit's assets, KrunchCash's proprietary assets, and third-party investors' assets. This created an opportunity for KrunchCash and Hackman to misappropriate funds, and they have done so here.

**F.  Pursuit's Discovery of $2.5 Million in Misappropriated Funds and Additional Concealment**

74.     Faced with increasingly difficult relations with Hackman, the dissipation of its assets without its consent, and another round of threats and demands for capital to support the

Maryland Default Action, Pursuit engaged counsel in 2021 in an effort to protect its investments and gain clarity on the situation with KrunchCash.

75.     In the process of investigating KrunchCash's practices, Pursuit learned that KrunchCash had engaged in a variety of additional, previously uncovered, and previously unknown improprieties.

76.     Critically, Pursuit learned that *KrunchCash collected, but did not disclose or disburse, $2.5 million* from the Maryland Advance in the Maryland Default Action. KrunchCash's failure to disclose a material revenue event on behalf of a substantial asset was highly material omission, and the failure to disburse those funds was a breach of the parties' agreements and KrunchCash's legal duties.

77.     KrunchCash's collection of $2.5 million necessarily indicates a variety of additional improprieties, including the obvious question as to where those funds went. KrunchCash has offered several explanations, none satisfactory or complete, and all highly problematic.

78.     For one, KrunchCash had concealed *millions of dollars* in spiraling legal fees. Just days before Pursuit and KrunchCash were due to speak in May 2021, Hackman surreptitiously deposited invoices into a shared Dropbox account, reflecting an outrageous $3.38 million in legal fees. Prior to this passive disclosure, KrunchCash had refused to provide invoices since July 2020, *i.e.,* nearly one year earlier, and the last estimate of total fees KrunchCash had provided was $1.5 million (in July 2020). KrunchCash did not disclose the ballooning total fees because, had it done so, it would have been immediately apparent to Pursuit and others that there were missing, unaccounted revenues.

79.     Second, despite the considerable exchanges concerning the propriety of $90,000 in McGhie's fees in 2020, McGhie and KrunchCash had retroactively charged *several*

*hundred thousand dollars* of his legal fees to the investors. In addition to being plainly improper (as discussed above), it is apparent that KrunchCash retroactively treated McGhie's fees (apparently dating back several years) as a litigation expense, to manufacture additional legal expenditures in an attempt to cover-up the $2.5 million in revenues that KrunchCash had misappropriated. This is fraudulent billing.

80. Finally, KrunchCash used the 2020 capital call funds from Pursuit and the monies KrunchCash misappropriated from Pursuit's other investments to subsidize co-investors' portions of the Maryland Default Action attorneys' fees. KrunchCash's representations that *Pursuit* was the delinquent funder were in fact the *inverse — KrunchCash* (and the Other Investor) were behind on their funding for the Maryland Default Action, while *Pursuit* had been current on its funding.

81. KrunchCash had patently defrauded Pursuit. KrunchCash did not, in fact, require funding for Maryland from Pursuit — to the contrary, simple math indicated that *KrunchCash owed Pursuit* because Pursuit had overfunded its relative share of legal fees. KrunchCash was only requesting *additional* funding from Pursuit because the Other Investor had withdrawn its support from KrunchCash—which Pursuit had not been told.

82. With Pursuit having *overfunded* the Maryland Advance (and the Default Action), and having uncovered the fraud, there is no justification for Pursuit to be investing additional monies unless and until the other investors catch up and KrunchCash reconciles the fraudulent accounting.

83. Moreover, the $2.5 million collection in the Default Action necessarily means that KrunchCash has already recovered from the largest, most solvent Defendants. Pursuit has reasonably requested substantiation for Hackman's insistence that the Default Actions

continue to be funded, but KrunchCash refuses to provide a worthwhile or reasoned strategy or budget to pursue smaller, less collectable Defendants.

84.     By its own unreasonable conduct and refusal to provide any fiduciary transparency, KrunchCash has put Pursuit in a holding pattern until it can reconcile these issues.

**G.  The Current Situation**

85.     Currently, Pursuit is focused on (i) protecting its valuable position in Pharma (including investing additional monies, to the extent necessary), and (ii) ensuring its other assets are also properly protected and not further dissipated, and shielded from risk associated with Hackman and KrunchCash's precarious situation.

86.     That concern is real. Today, KrunchCash's assets have dwindled and KrunchCash faces obvious liquidity concerns. Despite managing over $20 million in assets, Hackman solely controls KrunchCash and KC PCRD, and their Advances, and he regularly threatens to endanger Pursuit's investment position in bad faith.[12]

87.     Since Pursuit's discovery that KrunchCash misappropriated $2.5 million in May 2021, Hackman has become more entrenched and mercurial. Hackman has threatened to scuttle the Pharma litigation, improperly borrow against the litigations (using third-party litigation funding, rather than accept the condition that he properly account for Pursuit's funds), or cancel Pursuit's position altogether if Pursuit does not meet KrunchCash's extortionate demands for extra-contractual compensation, accede to his rewriting of the investment waterfall, or abandon Pursuit's claim.

88.     Hackman and KrunchCash's desperation is palpable.

---

[12] Notwithstanding KrunchCash's continued requests for capital to pay McGhie's fees, Pursuit understands that McGhie is no longer affiliated with KrunchCash.

89.     In August 2021, Hackman first manufactured a legal theory wherein Pursuit's investment had "expired" in April (as if Pursuit's $10 million disappeared into thin air). Elsewhere, he has concocted a theory whereby Pursuit undisputedly owns the Maryland and Pharma *Advances*, but is not entitled to *litigation recoveries* from the defaulted Advances. None of these convoluted theories are grounded in reality or common sense — the Pursuit-KrunchCash relationship is simple: Pursuit invests millions, KrunchCash selects assets, collects proceeds as those assets pay out proceeds, and KrunchCash pays Pursuit its share of the proceeds (through KC PCRD or otherwise).

90.     Defendants have not remitted <u>any funds</u> to Pursuit since 2019 (with the exception of the challenged Pharma payment in early-2020 discussed *supra*) despite KrunchCash's regular receipt of monies from Advances.

91.     Hackman refuses to negotiate a professional resolution to a multi-million dollar issue. Moreover, rather than allow an intermediary to negotiate a business solution for him, Hackman insists on handling all matters personally and, much like his unprofessional engagement with the adverse parties in the Default Actions, goes to great lengths to harass Pursuit's principals with threatening and unproductive text messages and phone calls meant to distract from the professional resolution of this matter.

92.     In June 2021, immediately after learning of KrunchCash's misappropriation of the $2.5 million and fraudulent McGhie billings, Pursuit brought an arbitration (the "Arbitration")[13] before the American Arbitration Association against KrunchCash, KC PCRD, Hackman, and McGhie.

---

[13] *Pursuit v. KrunchCash LLC et. al.*, AAA Case No. 1-21-0004-48121.

93. Notwithstanding the Arbitration (now the subject of motion to stay, as discussed below), the parties continued to negotiate surrounding the Pharma Advance — which appears to have a realistic specter of recovery and is heading for trial in December 2021. Pursuit **wants to** and is **ready, willing, and able** to fund the Pharma Default Action.[14]

94. However, Pursuit cannot in good conscience provide capital for KrunchCash and Hackman to access without sufficient assurances that those funds will be used properly and, when those Advances are realized, they will be distributed according to the parties' agreements. Defendants refuse to provide those assurances.

95. To protect the Pharma Advance, the parties attempted to reach a "partial" settlement agreement as it related to the Pharma Advance *only* — with Pursuit seeking to clarify the funding of the Pharma Advance while holding in abeyance the non-Pharma issues. When it became clear that those discussions would not succeed, Pursuit proposed, in writing an agreement where *all* funds — *i.e.,* Pursuit's additional capital invested into the Pharma Advance (the litigation) and the settlement funds (if any) from the Pharma Advance — would flow through an escrow account. Pursuit's solution was eminently reasonable: the Pharma litigation would be adequately funded (with *Pursuit's* funds), funds would be properly safekept, and the parties would preserve all rights to dispute monies through dispute resolution.

96. KrunchCash refused an escrow, and refused to permit Pursuit to protect the Pharma assets unless Pursuit would consent to collateral agreements, including making unwarranted compensation to KrunchCash or agreeing to prejudice Pursuit's rights *vis a vis* its concerns regarding KrunchCash's misappropriation of proceeds. Pursuit wants to protect the assets

---

[14] Pursuit is not unwilling to fund the Maryland Advance litigations, but KrunchCash refuses to resolve or remedy the issues discussed above.

without prejudice to either party — but KrunchCash simply will not permit Pursuit to do so, thus deliberately thrusting Pursuit's investments into further peril.

97.     Defendants moved for an order in the Supreme Court of the State of New York to stay the arbitration initiated by Pursuit, asserting that the dispute is not arbitrable under any of the parties' agreements. Despite the infirmity of Defendants' legal arguments for that stay, in October 2021 Pursuit opted not to dispute the application, in favor of this action (and without prejudice to the substantive claims). Defendants prefer to litigate publicly and in federal court, and so here we are.

**H.  Alter Ego Allegations**

98.     KC PCRD is the alter ego of KrunchCash.

99.     KrunchCash is the "parent company" of KC PCRD and, based on information and belief, KrunchCash owns 100% of the interests of KC PCRD. KC PCRD was organized on April 10, 2018 the same day the parties entered into the Amended IFA.

100.     KC PCRD has always listed Jeffrey Hackman, the sole owner of KrunchCash, as the "Manager" of KC PCRD. Both entities list 200 East Palmetto Park Road, #700, Boca Raton, Florida, as their address. That address is Hackman's home address. The entities maintain common office space, address, telephone numbers, and email accounts.

101.     KC PCRD and KrunchCash maintain a common "ledger" for Advances made using Pursuit's funds. Despite Hackman's insistence on the insertion of the KC PCRD entity in April 2018, KrunchCash continues to use the same ledger reflecting Advances in which Pursuit has an interest — which reflects all transactions between Pursuit and KrunchCash dating back to 2015, *i.e.,* years before KC PCRD existed.

102.    Hackman maintains complete discretion for both KrunchCash and KC PCRD. Hackman negotiated the terms of the Amended IFA with Pursuit. Hackman has the exclusive authority to execute agreements on behalf of both entities, to enter into Advances, to operate bank accounts, to commence litigation on behalf of both entities, and to issue tax documentation. KC PCRD has no independent authority to contract without KrunchCash's and/or Hackman's approval.

103.    KC PCRD was formed as a dummy entity for the sole purpose of executing the Amended IFA with Pursuit. At all relevant times KrunchCash has so dominated and controlled KC PCRD, including by assuming all of KC PCRD's obligations under the Amended IFA and making all decisions on behalf of KC PCRD for KrunchCash's benefit.

104.    Even though Amended IFA requires KC PCRD to service the Advances, as set forth in Section 4, KrunchCash has assumed that role by assuming the "full power and authority" to "collect payments," "remit[] payments," and dividing funds between Pursuit and KrunchCash.

105.    Since entering into the Amended IFA, Pursuit has remitted funds to KrunchCash — not KC PCRD — for all new and follow-on investments.

106.    Since entering into the Amended IFA, KrunchCash — not KC PCRD — has remitted funds to Pursuit on behalf of realized Advances (to the extent they occurred).

107.    KC PCRD is inadequately capitalized because Defendants require that Pursuit's monies invested in, and all returns from Advances flow through KrunchCash's accounts. Therefore, KrunchCash deliberately prevents funds from being deposited into the KC PCRD bank account.

108. KrunchCash commingles Pursuit's investment capital with its own capital, and the capital of third-party investors in KrunchCash's bank accounts, and does not isolate Pursuit's funds within KC PCRD.

109. KrunchCash is a party to the Default Actions, which are part of "servicing" obligations of the parties. KrunchCash assumed all responsibilities on behalf of KC PCRD thereunder.

110. On information and belief, KC PCRD does not observe corporate formalities: KC PCRD does not have a board of directors, does not conduct meetings of its members or officers, and does not maintain financial statements. KC PCRD has never issued tax returns to Pursuit.

111. Defendants' actions fall below any standard appropriate for a manager entrusted with $10 million of Pursuit's investment capital. Pursuit has been damaged immensely as a result of KrunchCash's material misrepresentations, concealment of material facts, misappropriation of assets, and abusive threats to harm assets in which Pursuit has an interest. Pursuit risks further harm without judicial intervention to curtail Defendants' abusive investment management practices.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(MARYLAND ADVANCES, PHARMA ADVANCES, CONNECTICUT ADVANCES)**
**(Against KrunchCash and KC PCRD)**

112. Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

113. Pursuit, KC PCRD, and KrunchCash are signatories to the Amended IFA. KrunchCash and its principal, Hackman, negotiated the Amended IFA directly with Pursuit, and Hackman is the signatory on behalf of KrunchCash and KC PCRD.

114.     The Amended IFA requires KrunchCash to remit KrunchCash's future proceeds received from Advances provided by KrunchCash to KC PCRD to be immediately distributed to Pursuit pursuant to the allocations and disbursements provisions of the Amended IFA.

115.     Moreover, KC PCRD is required to service the Advances, collect payments under the Advances, and remit payments received from Advances. KrunchCash assumed these obligations under the Amended IFA by serving as the signatory to the Advances, assuming responsibility as the servicer of the Advances, collecting funds from the Advances, and choosing to name itself as the litigant in the Maryland and Pharma litigations. Therefore, it is foreseeable that KrunchCash will be bound as the obligor under the Amended IFA.

116.     KC PCRD is required to segregate the funds in a Bank Account into which Pursuit's funds are deposited, and into which proceeds from Advances are delegated. KrunchCash assumed the obligation to segregate funds by requiring Pursuit's funds be deposited into its bank account, instead of the KC PCRD Bank Account, and by depositing proceeds from Advances into its bank account, instead of depositing them in the designated KC PCRD Bank Account.

117.     Additionally, since commencement of the Default Actions, Pursuit and KrunchCash have entered into agreements supplemental to the Amended IFA concerning the distribution of funds from those Default Actions.

118.     KC PCRD and KrunchCash breached the Amended IFA and the supplemental agreements by (i) not directing proceeds from the Advances to the KC PCRD Bank Account for distribution to Pursuit, (ii) breaching the distribution and allocation provisions of the Amended IFA, (iii) breaching the servicing obligations of the Amended IFA, (iv) improperly collecting funds from the Advances through KrunchCash and not through KC PCRD, (v) not

remitting payments received from the Advances, and (vi) requiring Pursuit's investment funds to be deposited into KrunchCash's, and not KC PCRD's, bank account, including without limitation through the proceeds from the Maryland Advances, the Pharma Advances, and the Connecticut Advances.

119.     Pursuit has been damaged as a result of Defendants' breaches.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
### (MISCELLANEOUS PLAINTIFF ADVANCES)
### (Against KrunchCash)

120.     Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

121.     KrunchCash and Pursuit entered into the Purchase Agreement dated September 2017 (as amended), which addresses KrunchCash's and Pursuit's rights and responsibilities with respect to the Miscellaneous Plaintiff Advances. The Purchase Agreement requires KrunchCash to make collections from third-party payors of funds and to remit those payments to Pursuit.

122.     Separately, in June 2019, KrunchCash agreed that KrunchCash owed Pursuit $239,366 on behalf of the Miscellaneous Plaintiff Advances.

123.     KrunchCash has refused to make those payments to Pursuit, in breach of the agreements, thereby damaging Pursuit.

124.     Pursuit has been damaged as a result of KrunchCash's breach.

## THIRD CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (Against KrunchCash, KC PCRD, and Hackman)

125.     Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

126.    Pursuit entrusted KrunchCash and KC PCRD with millions in investment capital to pursue Advances in good faith, safekeep Pursuit's funds and Advance positions, and act in Pursuit's interests.

127.    At all times, Hackman was the manager of KrunchCash and KC PCRD, and the sole member of KrunchCash, and KrunchCash was the parent-entity of KC PCRD.

128.    Moreover, KrunchCash assumed a position of trust accepting millions of dollars of investment funds from Pursuit, contracting with third-parties concerning the Advances, holding itself out as having the right to collect proceeds from the Advances, collecting payments under the Advances, remitting payments received under the Advances for the ultimate benefit of Pursuit, and designating itself as the party (with Hackman) asserting claims in the Maryland and Pharma Default Actions.

129.    Hackman has assumed the role of managing the Advances and the Default Actions concerning the Advances, has assumed a confidential relationship with Pursuit to communicate and advise Pursuit concerning those Default Actions and the Advances, has assumed the responsibility to protect the Advances through the Default Actions, controls the bank accounts for KrunchCash and KC PCRD, and, on information and belief, is the tax matters partner for KrunchCash and KC PCRD.

130.    KrunchCash, KC PCRD, and Hackman are thus in a fiduciary and confidential relationship with Pursuit, and owe Pursuit duties of loyalty, good faith, candor, and care.

131.    KrunchCash, KC PCRD, and Hackman have breached their fiduciary duties by: (i) placing their own interests ahead of Pursuit's by threatening to and actually harming the underlying Advances in order to extract improper payments from Pursuit, (ii) acting disloyally by

refusing to permit Pursuit to protect its interest in Pharma without Pursuit's agreeing to collateral agreements, (iii) threatening to raise capital against KrunchCash and/or the Advances to dilute Pursuit's interest in the Advances, (iv) improperly commingling Pursuit's investment funds with those of other investors (including KrunchCash's) and manipulating the accounts to misdirect Pursuit's funds towards other investors (including KrunchCash), (v) abusing their positions of trust by concealing the collection of Advances from Maryland, Pharma, and the Connecticut Advances, to obfuscate the financial condition of the Advances, (vi) refusing to provide accurate accounting to Pursuit, including by refusing to provide a complete accounting of the Advances and the expenses from the Default Actions concerning the Advances, withholding and selecting disclosing litigation invoices, not issuing tax documentation to Pursuit, and refusing to permit Pursuit's accountants to inspect the books and records of KrunchCash and KC PCRD, (vii) acting disloyally and engaging in waste by scuttling millions of dollars of litigation fees to cover up KrunchCash's financial impropriety through artificially inflated invoices and refusal to set a litigation budget or investment hypothesis, (viii) using the Maryland and Pharma Default Actions as a tool for Hackman's personal vendetta with the Maryland and Pharma borrowers, rather than for the benefit of Pursuit.

132.    Pursuit has been damaged as a result of Defendants breach of fiduciary duty.

**FOURTH CAUSE OF ACTION**
**CONSTRUCTIVE FRAUD**
**(Against KrunchCash, KC PCRD, and Hackman)**

133.    Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

134.    This claim is pleaded under Florida law, which governs Defendants' conduct in respect of managing the Pursuit investments.

135.     At all times, Hackman was the manager of KrunchCash and KC PCRD, and the sole member of KrunchCash, and KrunchCash was the parent-entity of KC PCRD.

136.     Pursuit is an investor in KrunchCash and KC PCRD, and held an equitable interest in their assets, but did not have access to and was not privy to these entities' business agreements, sources of revenue, bank accounts, or financial statements, and relied entirely upon Hackman's and KrunchCash's representations concerning all aspects of the investment.

137.     Additionally, KrunchCash assumed KC PCRD's role in servicing, collecting proceeds from, and managing litigation on behalf of the Advances through the Default Actions.

138.     As such, Hackman and KrunchCash were in a superior position to Pursuit with regard to the Advances in which Pursuit invested, and the Default Actions concerning the Maryland Advance and the Pharma Advance, and a relationship of trust and confidence existed between Hackman and KrunchCash, on the one hand, and Pursuit.

139.     Hackman and KrunchCash took unconscionable advantage of that position by (i) concealing the $2.5 million Maryland recoveries, (ii) misdirecting funds to McGhie and/or retroactively manufacturing fees for McGhie to pad litigation expenses and cover up the Maryland recoveries, (iii) concealing $3.3 million of legal invoices in the Maryland Default Action, (iv) misleading Pursuit regarding, and deliberately concealing, the relative financial contributions of KrunchCash and the Other Investor into Maryland Advance and the Maryland Default Action, (v) failing to disclose that Pursuit was in fact owed a credit on behalf of Maryland at the same time KrunchCash was requesting additional funds, (vi) converting a substantial portion of the Pharma recovery for its own benefit, (vii) concealing the nature of the Pharma collection in early 2020 to give Pursuit the false impression that the Pharma Advance was performing, (viii) misdirecting

proceeds from the Connecticut Advances without Pursuit's consent into a commingled KrunchCash account, for the benefit of KrunchCash, (iv) improperly stymying Pursuit's attempt to investigate the Maryland Advances through conversations with the Other Investor.

140.    Defendants have actively concealed their fraud by refusing to provide financial documentation to Pursuit, concealing material facts concerning the Advances, providing false information concerning Advances, concealing recoveries from Pursuit, providing false information concerning the KrunchCash-Other Investor relationship, and stymying Pursuit's efforts to discovery the truth of facts.

141.    Based upon its conduct, misrepresentations, and material omissions, KrunchCash, KC PCRD, and Hackman induced Pursuit into investing into KrunchCash and KC PCRD, entering into the Amended IFA, permitting KrunchCash to retain control over the Advances notwithstanding the Amended IFA, postponing repayment under various Advances, and delaying enforcement of Pursuit's rights against Defendants.

142.    As a result of Defendants' abuse of trust, Pursuit has been damaged.

## FIFTH CAUSE OF ACTION
### ACCOUNTING
### (Against KrunchCash and KC PCRD)

143.    Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

144.    KrunchCash and KC PCRD owed Pursuit a fiduciary duty because (i) KrunchCash and KC PCRD, as investment managers, assumed the responsibility of safekeeping Pursuit's assets, (ii) Pursuit has advanced substantial monies directly to KrunchCash, (iii) KrunchCash initiated Advances in the name of "KrunchCash" for the benefit of Pursuit, and (iv) Pursuit has advanced funds to KrunchCash to fund the Default Actions in the name of KrunchCash for the benefit of Advances in which Pursuit has an interest.

145.     There have been extensive and complicated transactions between the parties, for which KrunchCash and KC PCRD have refused to properly account, and the information necessary to account for Pursuit's investments and amounts owed to Pursuit is within the exclusive knowledge of KrunchCash and KC PCRD. More specifically, KrunchCash and KC PCRD have never provided financial statements, never provided complete bank statements, never provided tax documentation (e.g., a K-1 or 1099), and have refused to provide and/or provide incomplete information concerning the monies invested into litigation concerning the Maryland Advance and the Pharma Advance.

146.     Pursuit's legal remedies are inadequate to allow Pursuit to determine how the funds it has invested with KrunchCash and KC PCRD have been used, and/or the amount Pursuit is owed from its investments.

### SIXTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Against KrunchCash and KC PCRD)

147.     Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

148.     Defendants have taken the position at various times that the Amended IFA is not a binding agreement, does not cover particular Advances, does not cover the Default Actions, or does not address the particular circumstances pertinent to this dispute. To the extent those arguments are accepted, Pursuit pleads this claim in the alternative to express breach of contract.

149.     Additionally, there is no written contract between Pursuit and Hackman. Pursuit has funded millions of dollars to KrunchCash for purposes of the Advances, the Default Actions to enforce KrunchCash's rights under the Advances, and the defense of Hackman, personally.

150.    KrunchCash, KC PCRD, and Hackman have knowledge of the benefits conferred upon each of them, and each has voluntarily accepted and retained the benefits conferred under circumstances such that it would be inequitable for each to retain that benefit without paying Pursuit for the value thereof.

151.    Specifically, such benefits were extracted based on false and misleading representations, and procured by threats made to Pursuit, and were applied not for the benefit of Pursuit, but for the benefit of KrunchCash, KC PCRD, and Hackman such that it would be unconscionable to permit KrunchCash, KC PCRD, and Hackman to retain the benefits of Pursuit's millions of dollars of invested capital without any reciprocal benefit to Pursuit.

<u>SEVENTH CAUSE OF ACTION</u>
**FLORIDA BLUE SKY LAWS: FLA. ST. § 517.301**
**(Against KrunchCash, KC PCRD, and Hackman)**

152.    Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

153.    KrunchCash, KC PCRD, and Hackman offered or sold investments or securities: (i) in April 2018, they offered or sold Pursuit investments or securities through the Amended IFA, (ii) in July 2018, they sold a portion of the Pharma Advance to Pursuit, (iii) in November 2018, they sold a portion of the Pharma Advance to Pursuit, (iv) in January 2019, they sold a portion of the Pharma Advance to Pursuit, (v) in April 2019, they sold a portion of the Pharma Advance to KrunchCash, (iv) in April 2019 and December 2019, when they sold the Connecticut Advance to Pursuit, and (v) throughout 2020 and 2021, when Pursuit sold and attempted to sell additional participations in the Maryland Advance and the Pharma Advance for purposes of the Default Actions.

154.    KrunchCash, KC PCRD, and Hackman deceived Pursuit by (i) failing to disclose the material impairment of the Maryland Advance, (ii) misrepresenting KrunchCash's

cash investment into the Pharma Advance at the onset, (iii) misrepresenting the nature of KrunchCash's collection from the Pharma Advance in early 2020 to give the impression that Pharma Advance was continuing to perform, (iv) misrepresenting the relative investments of KrunchCash and the Other Investor into the Maryland Advances (and Default Actions), in order to induce Pursuit to invest funds into KrunchCash, (v) withholding the invoices from the Pharma and Maryland Default Actions, and artificially manipulating the purported expenses to obfuscate the cash needs for the assets and the misappropriation of the Maryland Advance Default Action settlements, (vii) withholding the fact that KrunchCash had incurred over $3.3 million in legal fees for the Maryland Advance Default Action, (viii) concealing the $2.5 million settlement in the Maryland Default Action while simultaneously demanding additional funds from Pursuit, (ix) concealing that the Other Investor had withdrawn support of KrunchCash, and (x) failing to disclose to Pursuit that it did not consider Pursuit's investment of hundreds of thousands of dollars under for the Default Actions to be under the Amended IFA.

155.    Moreover, KrunchCash, KC PCRD, and Hackman deliberately designed its investment structure with Pursuit as an artifice to defraud and implemented it in a deceptive manner: (i) KrunchCash and KC PCRD attempted to design a structure to circumvent providing Pursuit with proper tax documentation to make it impossible to verify the condition of Pursuit's investments, (ii) KrunchCash and KC PCRD deliberately inserted the KC PCRD entity under the representation that it would eliminate the possibility of commingling, but in fact used the structure to attempt to shield KrunchCash from liability, while also providing KrunchCash the opportunity to collect Pursuit's Advances and providing KrunchCash with a commingled slush fund to misappropriate Pursuit's funds, and (iii) KrunchCash deliberately failed to disclose whether it was

treating Pursuit's investments for the Default Actions as contributions under the Amended IFA or a separate transaction, so as to purposefully maintain optionality in the exercise of rights.

156.    Pursuit has been damaged by KrunchCash and KC PCRD's conduct.

157.    Pursuant to Florida Statute § 517.312, Pursuit is entitled to recission of these transactions, plus damages and penalties.

### EIGHTH CAUSE OF ACTION
### DECLARATORY JUDGMENT
**(Against KrunchCash, KC PCRD, and Hackman)**

158.    Pursuit realleges the allegations set forth in paragraphs 1-111 above as though fully set forth herein.

159.    A genuine dispute arises as to the parties' rights and obligations with respect to the Advances (including the Default Actions concerning the Advances), KrunchCash's and KC PCRD's obligations when and if recoveries are achieved in the Maryland and Pharma Advance litigations, and the obligations under Amended IFA moving forward.

160.    As such, there is a bona fide, actual, present and practical need for a declaration of rights.

161.    Pursuit requests a judicial determination at law and/or in equity as to the parties' rights and obligations with respect to the Advances, the Default Actions, and under the Amended IFA.

WHEREFORE, Plaintiff prays for judgment accordingly:

A.    Awarding damages in an amount to be proven at trial, but exceeding $10 million, for Defendants' breach of contract, breach of fiduciary duty, constructive fraud, and/or unjust enrichment;

B.    Requiring Defendants to remit proceeds from all Advances that KrunchCash misappropriated or mishandled to Pursuit;

C.    Requiring Defendants to disgorge the monies remitted to McGhie;

D.     Declaring the parties' rights and obligations under the various agreements, including that KrunchCash is obligated to pay over all proceeds received from Advances immediately to Pursuit;

E.     Rescinding Pursuit's investments into Defendants under the Florida Blue Sky Laws;

F.     Awarding penalty damages under Florida's Blue Sky Laws;

G.     Awarding attorneys' fees and costs under common law and Florida's Blue Sky Laws;

H.     Enjoining Defendants from taking actions that would jeopardize the Advances in which Pursuit has an interest (including the Default Actions);

I.     Requiring Defendants to provide an accounting of financial transactions, including funds received by and disbursed by KrunchCash and KC PCRD from January 1, 2018 through present;

J.     Awarding pre- and post-judgment interest;

K.     Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Date: October 25, 2021

TOBIN & REYES, P.A.

By: _/s/ *Sacha A. Boegem*_____
Sacha A. Boegem
Florida Bar No. 0024930
Mizner Park Office Tower
225 N.E. Mizner Blvd., Suite 510
Boca Raton, FL 33432
Phone: (561) 620-0656
Fax: (561) 620-0657
Email: eservice@tobinreyes.com
Email: sboegem@tobinreyes.com
Email: nallen@tobinreyes.com
*Counsel for Plaintiff Pursuit Special Credit*
*Opportunity Fund, L.P.*

SLARSKEY LLC

Evan Fried (*pro hac vice forthcoming*)
Renee Bea (*pro hac vice forthcoming*)
David Slarskey (*pro hac vice forthcoming*)
420 Lexington Ave., Suite 2525
New York, NY 10022
Phone/Fax: (212) 658-0661
Email: efried@slarskey.com
Email: rbea@slarskey.com
Email: dslarskey@slarskey.com
*Counsel for Plaintiff Pursuit Special Credit*
*Opportunity Fund, L.P.*